**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard William Heathershaw, | No. CV-14-01615-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Phoenix Police Department, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment.[1] (Doc. 55.) The motion is fully briefed. For the following reasons, Defendants' motion is granted.

## **BACKGROUND**[2]

On January 23, 2014, Defendants Phoenix Police Officers Daniel Rogers and George Fulton were dispatched to assist with two detained shoplifting suspects at a JC

---

[1] Plaintiff filed a motion to strike Defendants' reply memorandum as untimely. (Doc. 60.) The motion is denied because, contrary to Plaintiff's assertion, Defendants' reply memorandum was timely filed. Fed. R. Civ. P. 6(a)(1)(C), (d); LRCiv 56.1(d).

[2] Local Rule of Civil Procedure 56.1(b) requires a party opposing a motion for summary judgment to file a separate controverting statement of facts with correspondingly numbered paragraphs either agreeing with or disputing each of the moving party's statements of fact. Additionally, if the non-movant disputes a statement of fact, he must reference admissible evidence in the record showing that a genuine dispute exists. LRCiv 56.1(b). If the non-movant fails to properly address the movant's statements of fact, the Court may consider those facts undisputed for purposes of the motion. Fed. R. Civ. P. 56(e). Plaintiff did not file a separate controverting statement of facts, nor did he otherwise respond to each of Defendants' factual assertions or cite to admissible evidence in the record supporting his claim. Accordingly, for purposes of this order Defendants' factual assertions are deemed undisputed.

1    Penney store in Phoenix, Arizona.  (Doc. 56, ¶¶ 1-2.)  The suspects, Plaintiff Richard
2    Heathershaw and a female accomplice, were detained in the JC Penney loss prevention
3    office.  (*Id.*, ¶¶ 3-4.)  Officer Fulton reviewed security footage and spoke with various JC
4    Penney employees, including loss prevention staff.  (*Id.*, ¶¶ 6, 19, 21, 27, 30, 31.)  His
5    investigation revealed that Plaintiff and his accomplice first attempted to purchase several
6    items with a check and identification card that JC Penney employees suspected were
7    fraudulent.  (*Id.*, ¶¶ 10-11, 19-21.)  After the purchase was denied, Plaintiff concealed
8    two shirts in a bag that his accomplice was carrying.  (*Id.*, ¶¶ 11, 22.)  JC Penney loss
9    prevention staff stopped Plaintiff and his accomplice as they attempted to leave the store.
10   (*Id.*, ¶¶ 12, 13, 23, 29.)  During the encounter, Plaintiff became violent.  He punched one
11   loss prevention employee and attempted to pull a knife on another.  (*Id.*, ¶¶ 15-16, 24-25,
12   29.)  Eventually, loss prevention employees were able to handcuff Plaintiff and detain
13   him in the loss prevention office.  (*Id.*, ¶¶ 17-18, 26, 35.)

14   Incident to the arrest, Officers Rogers and Fulton searched a backpack that
15   Plaintiff was carrying.  (*Id.*, ¶ 36.)  Inside, they found two debit cards that did not appear
16   to belong to Plaintiff, along with numerous receipts for merchandise returned to various
17   stores.  (*Id.*)  The backpack also contained a pawnshop receipt marked with the name
18   "Daniel Bergin," and a glass pipe with what appeared to be white methamphetamine
19   residue on it.  (*Id.*, ¶ 37.)  When asked for his name, Plaintiff gave the name and date of
20   birth for Daniel Bergin.  (*Id.*, ¶ 40.)  However, MVD records revealed that Plaintiff did
21   not resemble him.  (*Id.*)

22   During the detention, Plaintiff complained that he was severely hurt and had
23   breathing problems.  (*Id.*, ¶ 38.)  Officers Rogers and Fulton called the Phoenix Fire
24   Department to administer medical care, but the fire department determined there was
25   nothing medically wrong with Plaintiff.  (*Id.*, ¶ 39.)  Accordingly, the officers transported
26   Plaintiff to the Mountain View Precinct for booking.  (*Id.*, ¶ 41.)

27   At the precinct, Officer Fulton removed Plaintiff's handcuffs and attempted to
28   obtain Plaintiff's fingerprints on a fingerprint card.  (*Id.*)  Plaintiff refused to cooperate,

1  clenched his hands into fists, placed his fists under his chest, and curled his body into a
2  ball. (*Id.*, ¶¶ 41-44.) Officers booked Plaintiff as a "John Doe" after determining that he
3  was not going to cooperate. (*Id.*, ¶ 46.) When officers attempted to place Plaintiff back
4  in handcuffs, Plaintiff fell to the floor, began struggling, and kept his hands under his
5  body. (*Id.*, ¶ 47.) After Plaintiff refused officers' commands to remove his hands from
6  under his body, Officer Fulton used his knee to apply pressure to Plaintiff's thigh in order
7  to force compliance. (*Id.*, ¶ 49.) Eventually, officers were able to handcuff him. (*Id.*)

8  Plaintiff against complained of injuries. He claimed that he had been assaulted at
9  JC Penney and needed medical attention because he could not breathe. (*Id.*, ¶ 52.)
10 Officer Fulton once again contained the fire department to provide medical assistance,
11 and the fire department once again found nothing medically wrong with Plaintiff. (*Id.*, ¶
12 53.) Officers Fulton and Rogers transported Plaintiff to Baptist Hospital for a medical
13 examination. (*Id.*, ¶ 54.) The hospital examined Plaintiff and took x-rays, but could find
14 nothing medically wrong with him. (*Id.*, ¶¶ 55-56.)

15 As he was escorted back to the patrol car, Plaintiff's identification card fell out of
16 his underwear. Officers conducted a records check and learned that there was a felony
17 warrant for Plaintiff's arrest and that he was considered a flight risk. (*Id.*, ¶ 60.)
18 Ultimately, Plaintiff was jailed on various charges related to his felony warrants and the
19 shoplifting incident. (*Id.*, ¶ 61.)

20 **LEGAL STANDARD**

21 Summary judgment is appropriate if the evidence, viewed in the light most
22 favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to
23 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
24 P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of
25 informing the district court of the basis for its motion, and identifying those portions of
26 [the record] which it believes demonstrate the absence of a genuine issue of material
27 fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

28 Substantive law determines which facts are material and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Furthermore, the party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## **DISCUSSION**

Plaintiff brings this lawsuit under 42 U.S.C. § 1983 against Officers Fulton, Rogers, and Michael Sales alleging that they violated his Fourth and Fourteenth Amendment rights by using excessive force during the booking process. (Doc. 1.) To succeed on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

1  "Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).  The operative question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Analyzing a Fourth Amendment excessive force claim requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted).  Traditionally, this balancing is conducted in three steps.  First, a court evaluates "the type and amount of force inflicted." *Espinosa v. City and Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (internal quotations omitted).  Second, the court considers the government's interest in using force, relying on factors such as, "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting escape." *Id.*  The court then "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion . . . ." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).

Here, Plaintiff has offered no evidence to support his claim or to refute Defendants' factual assertions.  The undisputed evidence shows that Plaintiff was arrested for, among other things, attempting to shoplift from JC Penney and for assaulting JC Penney employees.  He was uncooperative throughout the encounter.  Officer Fulton used force to compel compliance with officer demands only after Plaintiff refused to remove his hands from under his body during the fingerprinting and handcuffing process.  Further, there is no evidence that the force Officer Fulton used caused any injuries.  *Cf. Larez v. City of L.A.*, 946 F.2d 630, 634 (9th Cir. 1991) (officer used excessive force when he kicked plaintiff and smashed his face into the floor); *Martinez-Rodriguez v. United States*, 375 F. App'x 743, 744 (9th Cir. 2010) (whether officer used excessive force was triable issue of fact because he broke three of the plaintiff's fingers).  Based on

the undisputed facts, a reasonable jury could only conclude that the force used by Officer Fulton was reasonable under the circumstances.

Additionally, Officer Rogers was not present when the alleged excessive force occurred, and there is no evidence that Officer Sales was involved in the incident at all. (Doc. 56, ¶¶ 66-67.) Accordingly, liability cannot attach to these Defendants because they did not personally participate in the alleged excessive force.

## **CONCLUSION**

For the foregoing reasons, no reasonable jury could conclude that Defendants used excessive force during the booking process.

**IT IS ORDERED** that Plaintiff's motion to strike, (Doc. 60), is **DENIED** and Defendants' motion for summary judgment, (Doc. 55), is **GRANTED**. The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 11th day of April, 2016.

_____
Douglas L. Rayes
United States District Judge